(2 App. Div. 561.)

CANTON v. SIMPSON.

(Supreme Court, Appellate Division, First Department. March 20, 1896.)

1. NEGLIGENCE—TEAMS—RUNNING DOWN PEDESTRIAN.
    For the driver of a team, when it was almost dark, to approach a street crossing at a pace which prevented his being able to avoid running down a person whom he saw on the crossing waiting for a car to pass, that he might cross the street, is negligence.
2. SAME—CONTRIBUTORY NEGLIGENCE.
    One standing on a street crossing, waiting for a car in front of him to pass, that he may cross the street, will not be held guilty of contributory negligence because, seeing a rapidly approaching team close to him, he, in attempting to avoid it, runs in the opposite direction from which the team is approaching, instead of turning back to the sidewalk from which he had come.

Appeal from court of common pleas, trial term.

Action by Elizabeth Canton, executrix of William Canton, deceased, against William Simpson. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

Tallmadge W. Foster, for appellant.
Abel E. Blackmar, for respondent.

O'BRIEN, J. The action was brought, under the statute, to re-
cover damages for negligence causing the death of plaintiff's testator.
The question of the defendant's liability was submitted to the jury,
which returned a verdict in favor of the plaintiff for $1,300; and it
is from the judgment thereupon entered, and from the order denying a
new trial, that this appeal is taken. The appellant insists that the
evidence failed to show any negligence on the part of the defendant's
driver, and, in addition, not only failed to show circumstances from
which the absence of contributory negligence on the part of the de-
ceased might be fairly inferred, but affirmatively proved such negli-
gence on his part. In disposing of these questions an examination
of all the evidence, and a brief statement of the occurrences which led
up to the death of the plaintiff's testator, are rendered necessary.

It appears that the deceased, who was between 65 and 70 years of
age, on the afternoon of November 2, 1894, between 5 and half past
5 o'clock, left his home, in West Twenty-Fourth street, east of Sixth
avenue, and started westerly, on the upper sidewalk of that street, to
go to a store on Twenty-Fourth street, between Sixth and Seventh
avenues. On reaching Sixth avenue, what occurred is detailed by a
doctor, who testified that he was riding downtown on the platform
of a Sixth avenue surface car, and that when about to alight, at the
upper crosswalk of Twenty-Fourth street, he saw the decedent stand-
ing there, between the car tracks to the east, waiting for the car, upon
which the witness was, to pass; that the defendant's horse and
wagon were near the lower crossing, coming up on the car track on
which the decedent stood, "at a good square trot," about seven miles
an hour; that they approached the upper cross walk without
slackening speed, and when near the decedent, who was between the
two rails of the easterly track, the latter, seeing his danger, and find-
ing his passage obstructed by the car going down on the westerly
track, endeavored to save himself by running in a northerly direction,
but, being too slow to avoid the horse and wagon, he was struck,
thrown down, and run over; that the horse and wagon did not stop
till they had gone half a block away. The version given by the de-
fendant's driver was that as he was about to cross Twenty-Fourth
street he looked ahead, and the track was clear; he took a glance up
the street, each way, to see if there was any wagon crossing, and when
he looked ahead again he saw the deceased within about three feet
of the track, walking very slowly, and the instant he saw him he
shouted to him and checked his horse; that the man was looking
straight ahead to the front, going west; that when he first saw the
man he was across the downtown crossing of the street, and his horse
was about 10 feet from the deceased; that as soon as he saw the de-
ceased he started to check the horse, which seemed to slacken up
slightly; that the deceased did not seem to notice anything, but

walked deliberately in front of the horse; that he succeeded in checking the horse before he reached the crosswalk, but could not bring him to a standstill; that he passed the deceased before stopping the horse, and then pulled him to the side of the curb in front of the store two doors from the corner. He further stated that it was almost dark at the time. The only other witness examined said that when he first saw the deceased the defendant's horse was about 2 feet from the downtown crossing going up, and the deceased was on the uptown crosswalk, about 10 feet away from the car track on the east side of the avenue, about halfway between the curb and the car track, walking towards the west. He next saw the deceased under the defendant's wagon, and he turned his horse one side and stopped him before he came to the deceased. When he stopped his horse he was about halfway to the upper crossing. He had been driving behind the defendant's wagon for at least a block, and was going at the same rate of speed.

We think that upon this evidence it was clearly a question for the jury, because, if they believed the testimony of the doctor, who was an entirely impartial witness, it would appear that the deceased, while on a cross walk, where he lawfully had a right to be, and in attempting to cross the street, was run down by a wagon which was driven at a lively pace,—so lively that, according to the testimony of the driver himself, although he saw the deceased some distance away, he was unable to check the horse until after he had run down the deceased and gone some distance beyond the upper crosswalk. We think that the jury were clearly right in holding, upon such testimony, that the driver was negligent, because, at a time when, according to the driver, it was almost dark, and necessary to keep a sharp lookout for pedestrians and for other vehicles, he approached the street crossings at a pace which prevented his being able, though he saw the possibility of danger, to avert it. Nor do we think the record wanting in evidence from which the jury had a right to conclude that the decedent was free from contributory negligence. He had a right to cross the avenue, and, having got between the two rails of the easterly track, he was obliged to stop to permit a car going down town to pass; and while in that position he turned, and discovered the rapidly approaching wagon, which he endeavored to avoid by running in a northerly direction. This is not a case, then, of one placing himself in a position of danger, but of a person crossing an avenue, which he had the right to do, who, finding his passage obstructed by a car, and being placed in a position of danger by an approaching wagon, does what seems to him best, under the circumstances, to avoid danger. There was no time for deliberation, and that the decedent was anxious to secure his safety is evidenced by his running in a northerly direction, which was the only way he could escape the wagon, unless he returned to the easterly side of the avenue. Whether the latter would have been the more prudent course is entirely immaterial. One who, under such circumstances, exercises the best judgment of which he is capable, cannot be said to have been guilty of negligence or want of care. If the position of the appellant is right,—that the decedent was bound to see the approaching wagon,

and bound to keep out of its way, and to assume that it would not slacken its pace,—then we must reach a conclusion that pedestrians have no rights in the streets which the drivers of vehicles are bound to respect. We think that there was ample evidence to support the verdict, not only upon the ground of the driver's negligence, but also that the decedent in no way contributed by his negligence to his death, and that the verdict, under the facts here appearing, being moderate, should not be disturbed.

The judgment should therefore be affirmed, with costs. All concur.